ATTACHMENT A

FACTUAL BASIS

At all times relevant to this plea agreement, defendant operated the Motor Tanker ("M/T") Georgis Nikolos, a Greek-flagged oil tanker ship, approximately 748 feet in length and weighing 40,680 gross tons. Defendant is based in Piraeus, Greece.

Large ocean-going vessels, like the M/T Georgis Nikolos, produce waste oil as a result of the operation of machinery in the engine room. Some of the waste oil, together with water and other liquids, accumulate in the bottom or "bilges" of the vessel. This waste liquid typically drains into the "bilge wells," which are small compartments set into the bottom of the engine room compartment. The bilge waste is then collected and run through various processes designed to separate the oil and other wastes from the water. These processes include settling tanks and an Oil Water Separator ("OWS") (also known as a Bilge Water Separator), a pollution control device designed to remove or separate out oil. After processing by the OWS, bilge water containing very small amounts of oil may be legally discharged overboard. Oil removed from the bilge waste, along with other waste oils from the ship, including sludge generated by the fuel oil and lubrication oil purifiers, are stored in sludge tanks. Some vessels can burn the sludge in an incinerator or in the vessel's auxiliary boiler. Oil-contaminated bilge waste and other waste oils, including sludge, may also be off-loaded while

15

Attachment A

the vessel is in port and properly disposed of onshore.

Under the MARPOL Protocol, an international treaty implemented in the United States by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1901, *et seq.*, a ship may not discharge overboard oily waste with more than fifteen (15) parts per million ("ppm") of oil. The MARPOL Protocol and the APPS require that each oil tanker of 150 gross tons or more, or non-tanker vessels of more than 400 gross tons, maintain an "Oil Record Book" (also known as the "ORB"). All transfers of oil, disposal of sludge and bilge water, and overboard discharges of bilge water that have accumulated in machinery spaces and are thus contaminated with oil, must be fully recorded in the ORB. 33 C.F.R. § 151.25(d). The captain of the vessel must sign every completed page of the ORB. 33 C.F.R. § 151.25(h). The ORB must be maintained onboard for not less than three years and must be kept on board the vessel readily available at all reasonable times. 33 C.F.R. § 151.25(k).

The regulations authorize the U.S. Coast Guard to board and inspect all vessels in United States ports to determine compliance with federal regulations and the MARPOL Protocol. 14 U.S.C. § 89, 33 C.F.R. § 151.25. The inspection typically includes an examination of the ORB. The U.S. Coast Guard relies upon the accuracy of information contained in the ORB to assist in assessing the vessel operator's compliance with all applicable rules and regulations.

The Chief Engineer of the M/T Georgis Nikolos had overall responsibility for engine room operations, including, among other things, ensuring that waste oil that accumulated on board the vessel, including oily bilge water and oily sludge, were disposed of properly. The Chief Engineer also was responsible for supervising the operation of the vessel's OWS.

On or about January 18, 2006, the M/T Georgis Nikolos called at the port of Los Angeles, California. On that same date, Ioannis Georgios Vafeas reported for duty as Chief Engineer.

Between January 18, 2006, and March 18, 2006, a few days after the vessel departed a port, Vafeas instructed engineers and crew members to install and use a magic hose to discharge untreated oily bilge water and sludge overboard. At the time of the discharges, the engineers and crew members involved in the bypassing of the OWS knew that it was unlawful to discharge untreated oily bilge water and sludge directly overboard into the ocean without first processing the wastes through the OWS. The engineers and crew members also knew that the United States Coast Guard enforced international and U.S. prohibitions against oil pollution. Nevertheless, the engineers and crew members knowingly failed to record in the ORB those instances in which the OWS was bypassed in order to discharge untreated bilge water and oily sludge containing more than 15 ppm of oil directly overboard into the ocean.

On or about March 18, 2006, the M/T Georgis Nikolos called at the port of Long Beach, California. At that time and place,

17

1  crew members of the M/T Georgis Nikolos maintained an ORB that
2  contained knowingly false entries in that it failed to note the
3  January 18, 2006, to March 18, 2006, discharges that were done
4  without the use of the OWS.
5       Between March 18, 2006, and June 4, 2006, engineers and crew
6  members re-installed and used the magic hose to discharge
7  untreated oily bilge water and sludge overboard.  At the time of
8  the discharges, the engineers and crew members knowingly failed
9  to record in the ORB those instances in which the OWS was
10 bypassed in order to discharge untreated bilge water and oily
11 sludge containing more than 15 ppm of oil directly overboard into
12 the ocean.
13      On or about June 4, 2006, the M/T Georgis Nikolos arrived at
14 the port of Long Beach, California.  At that time and place, crew
15 members of the M/T Georgis Nikolos maintained an ORB that
16 contained knowingly false entries in that the ORB failed to note
17 the March 18, 2006, to June 4, 2006, discharges that were done
18 without the use of the OWS.
19 //
20 //
21
22      As an authorized representative of defendant DIAMLEMOS
23 SHIPPING CORP. ("defendant"), I have read the statement of facts
24 and carefully discussed every part of it with defendant's
25 attorney.  I stipulate and agree that, based on the evidence
26 developed during this investigation, the statement of facts is
27
28                                  18

accurate and correct, and constitutes a factual basis for the entry of guilty pleas, under the principle of *respondeat superior*, to two counts of failing to maintain an accurate Oil Record Book, in violation of the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1908(a), 33 C.F.R. § 151.25(a), (d), and (h).

_____  02/27/2008
Authorized Corp. Representative        Date
of defendant DIAMLEMOS SHIPPING CORP.

I am defendant's attorney. I have carefully discussed every part of this statement of facts with the authorized representative of defendant and agree that it constitutes a factual basis for defendant's guilty pleas to two counts of failing to maintain an accurate Oil Record Book, in violation of the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1908(a), 33 C.F.R. § 151.25(a), (d), and (h).

*Signature on next page*
_____  _____
MARC R. GREENBERG                Date
Counsel for Defendant
DIAMLEMOS SHIPPING CORP.

19

accurate and correct, and constitutes a factual basis for the entry of guilty pleas, under the principle of *respondeat superior*, to two counts of failing to maintain an accurate Oil Record Book, in violation of the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1908(a), 33 C.F.R. § 151.25(a), (d), and (h).

*signature on prior page*
_____    _____
Authorized Corp. Representative                Date
of defendant DIAMLEMOS SHIPPING CORP.


I am defendant's attorney.  I have carefully discussed every part of this statement of facts with the authorized representative of defendant and agree that it constitutes a factual basis for defendant's guilty pleas to two counts of failing to maintain an accurate Oil Record Book, in violation of the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1908(a), 33 C.F.R. § 151.25(a), (d), and (h).

_____    2/21/08
MARC R. GREENBERG                Date
Counsel for Defendant
DIAMLEMOS SHIPPING CORP.

19